IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA COACH LINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MCKEESPORT AREA SCHOOL DISTRICT, CITY OF MCKEESPORT, SEN. JAMES R. BREWSTER, MICHAEL CHEREPKO, DENNIS JOSEPH LOPRETTO, MARK HOLTZMAN and THOMAS MAGLICCO, <br><br> Defendants. | Civil Action No. 2:23-cv-611 <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Pennsylvania Coach Lines, Inc. ("PA Coach"), by and through its attorneys, Whiteford, Taylor, and Preston, LLP, and in support of the within Complaint states as follows:

## PARTIES

1. Plaintiff PA Coach is a Pennsylvania Corporation with its principal place of business located at 415 Rebecca Street, McKeesport, Allegheny County, Pennsylvania 15132.

2. Defendant, McKeesport Area School District ("MASD") is a school district organized and existing under the laws of the Commonwealth of Pennsylvania with administrative offices located at 3950 O'Neil Boulevard, McKeesport, Allegheny County, Pennsylvania 15132.

3. Defendant, the City of McKeesport ("City"), is a municipal entity organized and existing under the laws of the Commonwealth of Pennsylvania with offices located at 500 Fifth Avenue, McKeesport, Allegheny County, Pennsylvania 15132.

4.     Defendant, Senator James R. Brewster ("Sen. Brewster"), is an individual resident of Pennsylvania and the Pennsylvania State Senator of Senate District 45, which includes the City of McKeesport. His business address is 201 Lysle Boulevard, Suite 100, McKeesport, Allegheny County, Pennsylvania 15132.

5.     Defendant, Michael Cherepko ("Mr. Cherepko"), is an individual resident of Pennsylvania and the Mayor of the City of McKeesport, with a business address of 500 5th Avenue, Second Floor, McKeesport, Allegheny County, Pennsylvania 15132.

6.     Defendant, Dennis Joseph Lopretto ("Mr. Lopretto"), is an individual resident of the City of McKeesport, current school board member of MASD, and former school board president of MASD, with an address of 906 North Grandview Avenue, McKeesport, Allegheny County, Pennsylvania 15132.

7.     Defendant, Dr. Mark Holtzman ("Dr. Holtzman"), is an individual resident of Pennsylvania and the former Superintendent of MASD, with a business address of Beaver Area School District, 1300 Fifth Street, Beaver, Beaver County, Pennsylvania

8.     Defendant, Thomas Maglicco ("Mr. Maglicco"), is an individual resident of Pennsylvania and the City Administrator for the City of McKeesport, with a business address of 500 5th Avenue, McKeesport, Allegheny County, Pennsylvania.

**JURISDICTION AND VENUE**

9.     This Court has original jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C §1367(a).

2

**VENUE**

10. Venue is proper in the Western District of Pennsylvania, in that all parties are found to be in, and this action arises out of, events that occurred in Allegheny County, Pennsylvania.

**FACTS**

11. PA Coach provides school bus transportation for Pennsylvania school districts and their students. Prior to the COVID-19 pandemic, PA Coach served over 22 school districts in the Western Pennsylvania region, including MASD.

12. Until recently, PA Coach provided school bus transportation for MASD for almost two decades, including, most recently, pursuant to a Transportation Agreement entered into by PA Coach and MASD dated December 5, 2018 and attached hereto as **Exhibit 1**.

13. The aforesaid contract was a "bulk sale" or "requirements" contract whereby MASD received the benefit of an annual set price for all of its school bus needs and PA Coach received a set payment for its services such that the fewer busses it used, the more lucrative the contract was and, conversely, the more busses and drivers that were needed the less the profit margin (if any).

14. There were few, if any, problems in the business relationship between PA Coach and MASD until 2020.

15. In 2020, however, PA Coach president, David Sunstein ("Mr. Sunstein"), made public his support for then-candidate Nicole Ziccarelli ("Ms. Ziccarelli") for the upcoming election for the Pennsylvania state senate seat encompassing the City of McKeesport.

16. Ms. Ziccarelli's opponent, State Senator Jim Brewster (who ultimately won the election by 69 votes), was and remains closely allied politically with McKeesport Mayor Michael Cherepko and the majority of the MASD School Board, including former MASD Board President

Dennis Joseph Lopretto, former MASD Board President, Mindy Lundberg, who is Mr. Cherepko's sister-in-law, and current MASD Board President LaToya Wright Brown.

17. In the days leading up to the November 2020 election, Mr. Sunstein was approached by then-president of the MASD School Board, Mr. Lopretto, who demanded that he stop supporting Ms. Ziccarelli and that he remove the political sign he had erected on his property in support of Ms. Ziccarelli as a political favor, because Senator Brewster promised Mr. Lopretto that he would award Mr. Lopretto's son with a job working for the Commonwealth of Pennsylvania in Allentown if Mr. Lopretto succeeded in having Mr. Sunstein's signs removed.

18. Among other threats and exhortations, Mr. Lopretto told Mr. Sunstein: "you know how much trouble [the City of McKeesport and MASD] can cause you if you don't support [Sen. Brewster.]"

19. Approximately two weeks later, Mr. Lopretto returned to Mr. Sunstein's garage, again demanding that PA Coach remove the sign supporting Ms. Ziccarelli and threatening that "there would be problems for Mr. Sunstein and PA Coach" if the sign didn't come down."

20. In each of these visits Mr. Lopretto was acting in his capacity as then-president of the MASD School Board.  It is averred that the MASD School Board was controlled by Senator Brewster through Mr. Lopretto and others on the Board who were politically positioned on that Board by Senator Brewster.

21. Senator Brewster also accosted a PA Coach employee at his home, demanding that he remove his sign supporting Sen. Brewster's opponent and threatening the employee that there would be consequences for Mr. Sunstein and PA Coach if PA Coach and its employees did not support Sen. Brewster in the upcoming election.

22. When Mr. Sunstein refused, as his political speech is protected as a matter of law and right under the United States Constitution, he was threatened that there would be consequences for him and his businesses, including PA Coach.

23. Following the election, which Senator Brewster ultimately won by 69 votes, MASD, at the behest of Senator Brewster and Mayor Cherepko, embarked upon a calculated plan to retaliate against PA Coach and its president, David Sunstein, for refusing to support Senator Brewster politically.

24. First, MASD overreported – to a considerable degree – the number of students requiring transportation services in the district. These nakedly inflated numbers were reported to PA Coach in order to force PA Coach to make available far more buses and drivers than were actually necessary to transport the MASD students utilizing PA Coach's transportation services.

25. By knowingly inflating the number of students requiring transportation services, and refusing to make any accommodation for the nationwide bus driver shortage, MASD manufactured a controversy so that it could haul PA Coach into Court, seeking multiple injunctions to force PA Coach to transport all of the reported students to school, despite the fact that 1) MASD knew that neither PA Coach nor any other student transportation provider had sufficient drivers to meet their demand; and 2) the number of students reported far exceeded the number of students who actually required transportation.

26. To that end, MASD filed suit against PA Coach on September 2, 2021, in the Allegheny County Court of Common Pleas at GD-21-010591, seeking and ultimately obtaining multiple injunctions against PA Coach based on false representations that PA Coach could not provide transportation to all MASD students.

27. Those representations were based on student lists created by MASD that were falsely inflated and thereby fraudulent. PA Coach was losing money operating the contract under the false premise created by MASD.

28. Ultimately, MASD achieved what was apparently its goal, and PA Coach was forced to suffer the termination of the Transportation Agreement after the end of the school year in the summer of 2022 and allowed MASD to contract with a new transportation provider for 2023 and beyond.

29. Once MASD achieved this goal, and in the face of public pressure from parents and after further investigation, it admitted that it had been inflating its student transportation numbers.

30. Once MASD provided PA Coach with the correct student transportation numbers, PA Coach was able to use nine (9) fewer busses and transport all MASD students, with additional drivers available as substitutes.

31. Had MASD given PA Coach the correct number of students before the school year started, PA Coach would have been able to transport all students without difficulty, and MASD would have had no basis to drag PA Coach into court and no basis to attempt to terminate the Transportation Agreement.

32. Second, MASD abused the legal process of the Pennsylvania courts by suing PA Coach for the nationwide shortage of bus drivers, over which PA Coach had no control.

33. MASD refused to take any steps to work with PA Coach or to make any accommodations to the nationwide crisis, including expanding the zone within which students were required to walk to school; adopting a "pod" system of pickups that would utilize fewer buses; adjusting starting and dismissal times so fewer buses would be needed; or devoting additional financial resources to retain and/or recruit new bus drivers.

34. On the contrary, Dr. Holtzman visited PA Coach's garage to address the drivers, telling them that they should drive for Pittsburgh Public Schools, as the wage and bonus structure was superior to what could be provided on the MASD runs.

35. MASD further exacerbated this problem by refusing to address serious discipline problems on certain bus runs that were so pervasive and extreme that they caused multiple drivers to quit certain runs, and their fellow drivers to refuse to cover those runs. Rather than addressing those discipline problems, MASD took to the media, complaining that certain bus runs were uncovered and used these bus runs as a cudgel in court to attempt to force PA Coach out of its contract with MASD.

36. In fact, Mr. Sunstein was told by a MASD board member that, because he was not supporting Sen. Brewster for Senate, no one on the MASD School Board would help PA Coach get or keep drivers, regardless of whether it resulted in their students losing transportation services.

37. Following the cancellation of the Transportation Agreement, MASD's new transportation provider(s) have been unable to provide transportation services to all MASD students, despite utilizing all of the measures proposed by PA Coach such as expanding the walking zone; staggering starting and dismissal times; and adopting the "pod" system of pickups and drop-offs at central locations.

38. MASD has not initiated suit or taken any legal action to compel its new transportation provider(s) to provide the service for which they were contracted.

39. MASD's targeting of Mr. Sunstein and PA Coach was part of a pattern of systematically targeting employees, contractors, and even students whose opinions did not align politically with those of Senator Brewster, Mr. Cherepko, his sister-in-law Ms. Lundberg, Mr. Lopretto, and the majority of the MASD Board.

40. For example, the MASD Board targeted, harassed, and ultimately succeeded in forcing the removal of Superintendent Mark Holtzman in the summer of 2022.

41. On information and belief, Dr. Holtzman was pushed out because he refused to kowtow politically to Senator Brewster, Mr. Cherepko, and Mr. Cherepko's family, and because he continued to attempt to engage in a business relationship with Mr. Sunstein, rather than attempting to induce a breach of the Transportation Agreement with PA Coach.

42. By way of additional example, MASD refused to permit eleven (11) district students from forming a Black Student Union because one of the student's mothers was running for McKeesport mayor against Mr. Cherepko. MASD was ultimately sued by the ACLU of Pennsylvania and reached a settlement with the ACLU and the students involved.

43. Since replacing PA Coach with Krise Transportation in the summer of 2022, MASD has been unable to provide transportation for all of its students, resulting in at least one federal lawsuit. Even so, MASD has not attempted to hold its new transportation provider responsible, in fact taking the position in multiple court filings that the nationwide bus driver shortage should excuse it from being required to transport its students – the exact argument made by PA Coach that MASD contested for the better part of two years.

44. MASD, at the behest of Defendants Senator Brewster, Mr. Cherepko, Mr. Lopretto, and the City of McKeesport, retaliated against PA Coach and its president, Mr. Sunstein, for engaging in protected political speech in violation of Pennsylvania state law.

## **COUNT I – 42 U.S.C. § 1983 – POLITICAL AFFILIATION**

### **Plaintiff v. MASD**

45. Plaintiff incorporates the above paragraphs as if each was set forth at length herein.

46.     PA Coach did not surrender its rights, privileges, and immunities under the U.S. Constitution as a condition of its contract with MASD.

47.     Protections generally afforded to public employees against being discharged for refusing to support a political party or its candidates, or for otherwise exercising First Amendment rights, also extends to independent contractors.

48.     Under the First and Fourteenth Amendments of the U.S. Constitution, PA Coach and its president, Mr. Sunstein, have a right to choose whether to support political candidates based on their own personal preferences.

49.     MASD provided false information to PA Coach in order to manufacture a breach of the Transportation Agreement, so that it could obtain a termination of PA Coach as its transportation provider because of Mr. Sunstein's political affiliation in violation of his right to belief and association under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

50.     PA Coach's position of providing transportation to MASD students does not require a political affiliation similar to the political affiliation of the MASD directors.

51.     MASD's actions toward PA Coach and Mr. Sunstein were intentional and undertaken with reckless disregard of his federally protected right to not have his employment conditioned on a pledge of political allegiance to a party or candidate he may not prefer to support.

52.     MASD's conduct as set forth above was a conscious choice on the part of MASD to disregard the constitutional rights of PA Coach and Mr. Sunstein, and deprive Mr. Sunstein under color of state law of his rights of belief and association under the First Amendment of the U.S. Constitution in violation of 42 U.S.C. § 1983.

53. MASD's above conduct constitutes misuse of power possessed solely by virtue of state law and made possible only because MASD is clothed with the authority of state law.

54. As a direct and proximate result of MASD's intentional and reckless actions, PA Coach has sustained financial injury, reputational harm, and a loss of goodwill.

WHEREFORE, PA Coach demands judgment against MASD in an amount exceeding $50,000, costs and expenses of this litigation, and attorneys' fees pursuant to 42 U.S.C. § 1988, along with such other relief as the Court deems just and proper.

## COUNT II – 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION

### Plaintiff v. MASD

55. Plaintiff incorporates the above paragraphs as if each was set forth at length herein.

56. In the fall of 2020, Mr. Sunstein and PA Coach engaged in constitutionally protected conduct when Mr. Sunstein advocated for then-candidate Nicole Ziccarelli in the Pennsylvania State Senate election, which is a matter of public concern.

57. PA Coach's legal activity identified above is protected speech under the First Amendment to the U.S. Constitution.

58. Defendant MASD retaliated against PA Coach because its president, Mr. Sunstein, exercised his right of speech under the First Amendment of the U.S. Constitution when MASD acted unlawfully to enact a scheme to cancel the Transportation Agreement between PA Coach and MASD.

59. In executing its scheme to cancel the Transportation Agreement, MASD was acting under color of state law.

60. MASD's actions are the type of activity that would keep a person of ordinary firmness from exercising his freedom of speech under the First Amendment of the U.S. Constitution.

61. MASD knew that engineering a breach of the Transportation Agreement violated the constitutional rights of Mr. Sunstein and PA Coach.

62. MASD's conduct above constitutes misuse of power possessed solely by virtue of state law and made possibly only because MASD is cloaked with the authority of state law.

63. MASD did not have an adequate justification for treating PA Coach differently from any other member of the general public as a result of Mr. Sunstein and PA Coach's constitutionally protected conduct.

64. Mr. Sunstein's protected political speech was a substantial factor in MASD's decision to enact and implement a scheme to cancel the Transportation Contract with MASD.

65. As a direct and proximate result of MASD's intentional and reckless actions, PA Coach has sustained financial injury, reputational harm, and a loss of goodwill.

WHEREFORE, PA Coach demands judgment against MASD in an amount exceeding $50,000, costs and expenses of this litigation, and attorneys' fees pursuant to 42 U.S.C. § 1988, along with such other relief as the Court deems just and proper.

## COUNT III – FRAUD

### Plaintiff v. MASD

66. Plaintiff incorporates the above paragraphs as if each was set forth at length herein.

67. MASD made material representations to PA Coach for the duration of the Transportation Agreement concerning the number of students for which PA Coach was required to provide transportation.

68. Those representations were material in that they determined how many buses and drivers PA Coach was contractually obligated to make available on a daily basis to meet MASD's transportation needs.

69. Those representations were false.

70. MASD fraudulently inflated the lists of students provided to MASD with the intent of misleading PA Coach into relying on them.

71. PA Coach justifiably relied on the false student lists in designing its routes and in determining the number of buses and drivers it needed to make available to provide transportation for MASD.

72. As a result of the national bus driver shortage, along with behavioral issues on certain MASD bus runs, PA Coach supposedly did not have enough drivers to cover all the necessary bus runs to provide transportation for all MASD students as reported by MASD.

73. However, at all times PA Coach had enough drivers and runs to provide transportation for all **actual** MASD students, and had MASD provided PA Coach with the correct, unembellished student lists, MASD would have never had cause to accuse PA Coach of breaching the Transportation Agreement, nor would PA Coach have agreed to allow the agreement to be terminated.

74. In fact, from January, 2022 onward, as soon as PA Coach received the correct MASD student rosters, PA Coach never missed a bus run thereafter.

75. As a direct and proximate result of MASD's intentional and reckless actions, PA Coach has sustained financial injury, reputational harm, and a loss of goodwill.

## COUNT IV – ABUSE OF PROCESS

### Plaintiff v. MASD

76. Plaintiff incorporates the above paragraphs as if each was set forth at length herein.

77. MASD filed the above-referenced lawsuit at GD-21-010591 solely for the purpose of embarrassing PA Coach publicly, interfering with PA Coach's professional business, relationships, and browbeating it into agreeing to a cancellation of the Transportation Agreement.

78. The acts of bringing multiple motions for preliminary injunctive relief and for sanctions were done primarily to accomplish a purpose for which those processes were not designed; namely, to retaliate against PA Coach and Mr. Sunstein for his political affiliation and to induce him to agree to cancel the Transportation Agreement.

79. As a direct and proximate result of MASD's intentional and reckless actions, PA Coach has sustained financial injury, reputational harm, and a loss of goodwill.

## COUNT IV – DEFAMATION

### Plaintiff v. MASD and Mark Holtzman

80. Plaintiff incorporates the above paragraphs as if each was set forth at length herein.

81. MASD superintendent, Dr. Mark Holtzman, gave an interview to WPXI on May 19, 2022, in which he falsely claimed on behalf of MASD that "thousands of children were unable to attend school due to buses being cancelled daily," that "there was not a whole lot [MASD] could do," and "the only option was to go to court."

82. These claims were false. First, there are only 3,385 students in the entirety of the McKeesport Area School District; it is simply a lie that "thousands" were unable to attend school.

83. Second, PA Coach advised MASD and Dr. Holtzman of the nationwide shortage of bus drivers well in advance and proposed numerous solutions to the problem, including instituting

a "pod" system, staggering start and end times for schools to allow for multiple runs, and expanding the distance from the school from which children were required to walk. MASD and Dr. Holtzman refused all of these accommodations when PA Coach proposed them (but instituted them all when Krise Transportation proposed them months later).

84. Third, had MASD submitted accurate student numbers to PA Coach, there would have been no shortage of buses and all MASD students would have been transported.

85. These statements were published by WPXI on May 19, 2022, and remain publicly available at https://www.wpxi.com/news/local/mckeesport-school-district-proposing-new-contract-alleviate-bus-route-issues/S6ZJRPIMANDNJHWTAZEZHEWSYA/.

86. These statements applied to PA Coach.

87. The public understood the defamatory meaning of the statements of MASD and Dr. Holtzman.

88. The public understood the statements of MASD and Dr. Holtzman specifically concerned PA Coach.

89. As a direct and proximate result of this conspiracy, PA Coach has sustained financial injury, reputational harm, and a loss of goodwill.

90. MASD and Dr. Holtzman had no conditionally privileged occasion to make these defamatory statements, or, in the alternative, abused any such conditional privilege.

## **COUNT V – CIVIL CONSPIRACY**

### **Plaintiff v. All Defendants**

91. Plaintiff incorporates the above paragraphs as if each was set forth at length herein.

92. Each of the Defendants acted with a common purpose to retaliate against Mr. Sunstein for his political opposition to Defendant Brewster by, *inter alia*,

    a. Manufacturing a breach of the Transportation Agreement;

    b. Making false statements to the news media concerning PA Coach's alleged breach of the Transportation Agreement; and

    c. Filing suit against PA Coach.

  93. MASD and its Superintendent, Mark Holtzman, committed an overt act done to further this common purpose by, *inter alia*, providing false student data to PA Coach, permitting its representatives to make false statements to the news media concerning PA Coach, and filing suit against PA Coach.

  94. The City of McKeesport, its Mayor, Defendant Michael Cherepko, and its City Administrator, Thomas Maglicco, committed an overt act done to further this common purpose by, *inter alia*, dispatching Mr. Maglicco, to PA Coach's Elizabeth Forward garage to threaten PA Coach's employees with political retaliation to convince Mr. Sunstein to cease his support of Senator Brewster's opponent.

  95. Defendant Brewster committed an overt act done to further this common purpose by, *inter alia*, confronting and threatening PA Coach's employees and promising political favors to members of the MASD School Board, including Mr. Lopretto, in return for MASD taking illegal retaliatory action against PA Coach.

  96. Defendant Cherepko committed an additional overt act done to further this common purpose by, *inter alia*, influencing his family members and City of McKeesport employees on the MASD School Board, along with City of McKeesport employee McGlicco, to take illegal retaliatory action against PA Coach due to Mr. Sunstein's failure to support Senator Brewer politically.

97. Defendant Lopretto committed an overt act done to further this common purpose by threatening Mr. Sunstein on multiple occasions with political retaliation from the City of McKeesport and MASD if he did not remove signs from his property supporting Senator Brewster's opponent.

98. As a direct and proximate result of this conspiracy, PA Coach has sustained financial injury, reputational harm, and a loss of goodwill.

WHEREFORE, PA Coach demands judgment against MASD in an amount to be determined at trial, costs and expenses of this litigation, and attorneys' fees pursuant to 42 U.S.C. § 1988, along with such other relief as the Court deems just and proper.

Respectfully submitted:

Dated: April 13, 2023       By:       */s/ Ray F. Middleman*
                                      Ray F. Middleman
                                      Pa. ID. No. 40999
                                      rmiddleman@whitefordlaw.com
                                      Shane D. Valenzi
                                      Pa. ID. No. 322025
                                      svalenzi@whitefordlaw.com
                                      WHITEFORD, TAYLOR & PRESTON, LLP
                                      11 Stanwix Street, Suite 1400
                                      Pittsburgh, Pennsylvania 15222
                                      T:  412-752-7788
                                      F:  412-752-7808